IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Harry J. Przekop, | ) | |
| | ) | Case No. 13-cv-1513 |
| | ) | |
| Plaintiff | ) | Hon. John Z. Lee |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Cook County Illinois, d/b/a Cermak Health Services of Cook County, | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**First Amended Complaint and Jury Demand**

Plaintiff Harry J. Przekop, by and through the undersigned counsel, alleges the following for his complaint against Cook County, Illinois ("Cook County") in connection with its operation of Cermak Health Services ("Cermak"), a part of the Cook County Health and Hospital System ("CCHHS"):

**Preliminary Statement**

1. This case exists only because the then chief medical officer of Cermak, Dr. Avery Hart, bullied subordinates with disabilities, including the plaintiff, Mr. Przekop, making his working life untenable and otherwise acting in violation of the Americans with Disabilities Act.

2. Since February 28, 2000, Mr. Przekop has served as a physician assistant at Cermak. Dr. James McAuley (then Cermak's chief medical officer) specifically recruited Mr. Przekop to provide medical care to detainees and inmates with HIV and AIDS in the

Cook County Department of Corrections, and it was understood and agreed that Mr. Przekop's area of medical specialization—HIV/AIDS—was his primary clinical focus. Cermak was aware of Mr. Przekop's disability when it recruited and hired him, and Cermak accommodated Mr. Przekop's disability for much of his tenure there.

3. Mr. Przekop's medical and scientific expertise in providing care to HIV-positive and AIDS patients is unquestioned. Many of his patients specifically requested and trusted his care. Mr. Przekop also helped establish a continuity of care clinic at CCHHS's Ruth M. Rothstein CORE Center, which extended the treatment and management of HIV/AIDS care to recently released patients and prisoners from the Illinois and federal correctional facilities. This clinic has been a model of HIV/AIDS care to other correctional facilities. In addition, Mr. Przekop has disseminated his knowledge in HIV/AIDS care through his numerous distinguished faculty appointments and lectures in HIV immunology, care, and treatment.

4. Until the events giving rise to this complaint—until Dr. Avery Hart took over as Cermak's chief medical officer—Mr. Przekop's work was held in the highest regard by multiple Cermak chief medical officers, as reflected in Mr. Przekop's outstanding evaluations and in their willingness to permit Mr. Przekop to re-organize and establish clinics at Cermak and the CORE Center.

5. Unfortunately, Mr. Przekop suffers from chronic ulcerative colitis, a form of inflammatory bowel disease ("IBD") where the lining of the colon becomes inflamed and develops tiny open sores (or ulcers) that produce pus and mucous. Mr. Przekop's condition produces waxing and waning flare-ups and remissions, often with painful and debilitating

2

symptoms. Within the past several years, Mr. Przekop has experienced extensive and repetitive flare-ups with shorter remission periods and secondary related symptoms, including frequent and extensive bouts of diarrhea, dehydration, rectal bleeding, severe cramping, and fatigue. There is no known cure for ulcerative colitis other than for a patient to take the drastic step of removing all or part of his colon. Mr. Przekop's ulcerative colitis is a disability within the meaning of the Americans with Disabilities Act.

### The Parties

6. Cook County is a home rule county; Cermak is an administrative body within Cook County. Cermak is also the largest single site correctional health facility in the United States, and it provides health care to thousands of detainees at the Cook County Department of Corrections every year. Maintaining public health in the Cook County jail system is an important part of Cermak's mission: according to the CCHHS website, "[t]he staff at Cermak actively work to treat and prevent chronic and communicable diseases, including AIDS and tuberculosis."

7. Harry J. Przekop is a resident of Chicago, Illinois. He is a licensed physician assistant and biomedical physicist who specializes in HIV and AIDS care, research, and epidemiology. And as discussed, *supra*, Mr. Przekop is a highly competent, very popular, and trusted HIV/AIDS medical provider on whom many patients relied for care. His research contributions have enabled Cermak to obtain HIV-related funding, and his educational efforts have taught others how to provide care to patients suffering from HIV and AIDS.

## Jurisdiction and venue

8. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1331 because Mr. Przekop's complaint alleges violations of the laws of the United States, specifically Title I and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 1211 and 12201, *et. seq.*

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because (i) defendant Cook County is located within this district, and (ii) all of the acts and omissions giving rise to this complaint occurred in this district.

## Additional Factual Allegations

10. To allow Mr. Przekop to manage his disability, every chief medical officer at Cermak (other than Dr. Hart, as discussed *infra*) has allowed Mr. Przekop to work ten hours a day from Monday to Thursday, allowing him to take off of work on Friday, as opposed to working eight hours a day from Monday through Friday. This accommodation never interfered with Mr. Przekop's ability to care for his patients, nor did it disrupt Cermak's operations. And this necessary accommodation allowed Mr. Przekop to manage his own medical needs.

### *Dr. Avery Hart discriminates against Harry Przekop*

11. Dr. Hart became Cermak's full-time chief medical officer in the fall of 2009. Upon information and belief, Dr. Hart knew about Mr. Przekop's IBD when he became Cermak's chief medical officer, or he learned about Mr. Przekop's disability shortly thereafter.

4

12. Beginning in spring 2010, Dr. Hart directed a series of adverse employment actions designed to make Mr. Przekop's working life as uncomfortable as possible by targeting Mr. Przekop's disability in an effort to get Mr. Przekop to leave Cermak and the CCHHS.

13. As an initial matter, in April 2010, Dr. Hart forced Mr. Przekop's attending physician (Dr. Chad Zawitz) to lower Mr. Przekop's performance evaluation from the original excellent evaluation that Mr. Przekop earned. When Mr. Przekop asked Dr. Zawitz about the changed evaluation, Dr. Zawitz told Mr. Przekop that Dr. Hart forced the change because Dr. Hart believed "no one is that good." On information and belief, Dr. Hart's prejudice against persons with disabilities influenced his decision to take action against Mr. Przekop.

14. In August 2010, Dr. Hart told Mr. Przekop that he was changing Mr. Przekop's clinical schedule, requiring Mr. Przekop to work Monday through Friday with possible evening hours. However, Dr. Hart said that Mr. Przekop could use time under the Family Medical Leave Act (the "FMLA") if he needed to use time on Friday to treat his condition. Or, in other words, Dr. Hart removed an accommodation from Mr. Przekop that all of his predecessors had allowed and required Mr. Przekop to use the limited time allotted under the FMLA. When Mr. Przekop protested, Dr. Hart told Mr. Przekop that he could resign if he did not like the new scheduling.

15. On September 30, 2010, Mr. Przekop collapsed at Cermak, and was ultimately diagnosed with pneumonia. Mr. Przekop's IBD slowed his recovery from his pneumonia; ultimately, he was out of work for a month. When Mr. Przekop returned to

5

Cermak, he found that Dr. Hart had taken away his office and placed him in a work carrel next to a kitchen. (To persons with IBD, proximity to a work-place kitchen, and its attendant smells, can exacerbate symptoms.) When Mr. Przekop complained, Dr. Hart was largely indifferent to the potential of exacerbating Mr. Przekop's condition.

16.     On January 25, 2011, Dr. Hart transferred Mr. Przekop from HIV/AIDS to primary care at Cermak pursuant to a memo he prepared in November, 2010. (A copy of this memorandum is attached hereto as Exhibit A.) Primary care is a medical discipline in which Mr. Przekop was not current and had not practiced in over a decade. In the memorandum, Dr. Hart claimed that he was transferring Mr. Przekop to accommodate his IBD, and to improve the quality of care at Cermak. But these excuses were specious as transferring Mr. Przekop away from his area of expertise did nothing to accommodate Mr. Przekop's disability. Nor could the transfer be in Cermak's best interest because (i) on information and belief, Mr. Przekop was replaced in HIV/AIDS care by a less experienced non-disabled person, and (ii) Mr. Przekop has never specialized in primary care.

17.     Further, the transfer to a less familiar area of medicine exacerbated Mr. Przekop's disability by increasing his stress and pain. By way of comparison, the transfer to "float" duties required Mr. Przekop to travel to variable clinical assignments in remote and difficult-to-reach Divisions, with very limited bathroom access. To reach these area, Mr. Przekop often had to walk significant distances outdoors or through tunnels with high temperatures and humidity. (And indeed, on July 7, 2011, while walking to one of his new duty stations, Mr. Przekop became ill and went to the emergency room where he was treated for symptoms connected with his IBD.) Mr. Przekop's previous assignment had been in

6

a centralized location in Cermak's newer air-conditioned building with accessible bathrooms.

18. When Mr. Przekop told Dr. Hart that (i) he did not want to switch disciplines, (i) that transfer from his chosen field to a less familiar field was a demotion, and (ii) the stress of the transfer was likely to exacerbate his symptoms, Dr. Hart told Mr. Przekop that he could accept the change or he could quit.

19. Further, Mr. Przekop's new assignment to general practice came with significant schedule changes, which negatively impacted Mr. Przekop's ability to manage his IBD. Dr. Hart was indifferent to the potential of exacerbating Mr. Przekop's condition, informing Mr. Przekop to use leave under the FMLA if he (Mr. Przekop) felt it necessary. In short, Dr. Hart offered Mr. Przekop a Hobson's choice: (i) Mr. Przekop could accept the new scheduling (using FMLA time to ameliorate some of the effects of the schedule shift) and potentially exacerbate his IBD, or (ii) Mr. Przekop could quit.

20. In July 2011, Mr. Przekop asked Dr. Hart whether he (Dr. Hart) would support a transfer to the CORE Center so that Mr. Przekop could return to his work with HIV/AIDS patients. Dr. Hart's response was "no, you [Mr. Przekop] are washed up in HIV."

21. On July 13, 2011 during a monthly remediation meeting with Dr. Hart and Dr. Feldman, Dr. Hart threatened to terminate Mr. Przekop once his "FMLA ran out." Mr. Przekop immediately reported Dr. Hart's termination threat to Mr. Wesley Morgan, former director of Human Resources. Less than a week later, Mr. Przekop was involuntarily placed on unspecified administrative leave with pay. Dr. Hart subsequently mandated that Mr.

7

Przekop go to Employee Health Services for a "Fitness for Duty" evaluation, and unilaterally scheduled Mr. Przekop for an appointment on Tuesday, August 2, 2011. Mr. Przekop, who was very ill due to severe IBD symptoms (aggravated by the extreme stress and anxiety caused by Dr. Hart's ongoing harassment and mistreatment) contacted Employee Health Services, and told the persons there that (i) he was ill, and (ii) his doctor advised he not attend the evaluation, but (iii) he would attend the evaluation if required. Employee Health Services advised Mr. Przekop to focus recovering from his IBD symptoms and not to attend the Fitness for Duty evaluation. In retaliation, Cermak discontinued Mr. Przekop's paid administrative leave.

22. On November 1, 2011, Mr. Przekop filed a charge of discrimination with the Illinois Department of Human Rights (cross-filed with the United States Equal Employment Opportunity Commission) alleging disability discrimination. Mr. Przekop received a right to sue letter (attached hereto as Exhibit B) dated November 5, 2012. Mr. Przekop initiated this litigation on February 1, 2013 in Cook County Circuit Court. Accordingly, this litigation is timely.

23. Dr. Hart's abuse (in addition to exacerbating Mr. Przekop's IBD) has caused undue anxiety and clinical depression with a host of secondary symptoms. Ultimately, the discrimination Mr. Przekop's suffered at Cermak has severely impacted his physical and mental health, his livelihood, and his ability to work in his chosen profession. Accordingly, Mr. Przekop was forced to apply for (and he has received) ordinary disability. Cermak, however, continued to retaliate against Mr. Przekop by (i) not timely forwarding his em-

ployee verification statement, and (ii) submitting incorrect documentation, the effect of which has been to cheat Mr. Przekop out of his benefits.

## Count I

24. Mr. Przekop re-alleges and incorporates paragraphs 1–23 of his complaint as if set forth fully herein.

25. Mr. Przekop was qualified to work as a physician assistant at Cermak.

26. Mr. Przekop (i) has a disability, (ii) had a record of having a disability, and (iii) was perceived by his supervisors as being disabled, all within the meaning of the Americans with Disabilities Act.

27. Cook County—acting through its agents, Dr. Avery Hart and others—engaged in unlawful employment practices under Title I and Title V of the Americans with Disabilities Act, 42 U.S.C. §§ 12111 and 12201, *et. seq.* These unlawful employment practices are identified *supra* and include, without limitation, (i) eliminating a previous accommodation by requiring Mr. Przekop to work an altered and variable schedule, (ii) transferring Mr. Przekop away from the specialty HIV/AIDS medical care he was recruited to provide, (iii) requiring Mr. Przekop to use leave under the FMLA as opposed to providing reasonable scheduling accommodations for Mr. Przekop's disability, (iv) threatening Mr. Przekop with termination once he exhausted his FMLA leave, (v) placing him on paid administrative leave after he collapsed at work for a disability-related medical problem, then retracting his pay and forcing him to take unpaid FMLA time because he was unable to comply with an unreasonable demand to see an Employee Health Services provider for a Fitness for Duty evaluation on a date when he was sick, and (vi) continuing the retaliation against

9

Mr. Przekop by withholding necessary disability forms and providing incorrect disability-related information to the Pension Board, thereby cheating Mr. Przekop out of his benefits.

28. Cook County—acting through its agents, Avery Hart and others—would not have taken adverse action against Mr. Przekop if Mr. Przekop did not have a disability, and would not have retaliated against Mr. Przekop had he not complained about discriminatory treatment.

29. Mr. Przekop has suffered damages, including without limitation, lost wages (including pension credits and other accruals), compensatory damages, attorneys' fees, and costs of suit. Further, Cook County (through its agents) acted with reckless disregard for Mr. Przekop's rights under the ADA by (among other things) (i) requiring Mr. Przekop to make the Hobson's choice of using FMLA leave or having his employment at Cermak terminate, (ii) transferring Mr. Przekop from his area of specialty to an area where he had limited expertise, (iii) engaging in various forms of retaliation.

WHEREFORE, Mr. Przekop respectfully prays that this Court:

A. Award him compensatory damages in an amount to be determined by the jury;

B. Award him his cost of suit;

C. Award him his attorneys' fees;

D. Award any other appropriate relief, including relief that the Court deems just and equitable.

**Jury Demand**

Mr. Przekop demands trial by jury on all issue so triable.

Respectfully submitted,

                                              s/Fitzgerald T. Bramwell
                                              Fitzgerald T. Bramwell

                                              Law Offices of Fitzgerald Bramwell
                                              155 North Wacker Drive, Suite 4250
                                              Chicago, Illinois 60606
                                              312-803-3682 (voice)
                                              bramwell@fitzgeraldbramwell.com